State
vs.
Henry A. Perriello (Ind. No. 15095.
and
Giovanni Mielo

May 20, 1930.

CAPOTOSTO, J. The defendants were convicted of robbery. Both defendants move for a new trial upon the usual grounds.

About 9:45 in the forenoon of March 25, 1929, Ernest Di Luglio, clerk and messenger for the Dante State Bank, was seized from behind as he was boarding an electric car at the corner of Vinton street and Atwells avenue in the City of Providence, and a bundle said to contain $5000 was snatched from under his arm. The thief made his escape in an automobile.

The State contends that the person who committed the robbery is Giovanni Mielo; that the operator of the automobile is Henry A. Perriello; and that the automobile belongs to Mielo and bore No. 521,515, Massachusetts registration. The defence maintains that the automobile in question was not at the scene of the robbery; that Perriello

was not in Providence when the money was stolen; and that Mielo was in Boston, Massachusetts, at the time the act is said to have been committed.

The case involves three main questions. First: was an automobile used by a confederate of the thief at the scene of the robbery, what was its registration and to whom did it belong? Second: if a car was used, who was the driver? Third: Who was the thief and where was Mielo? Let us examine the evidence upon these points in the order named.

*First: The question of the automobile.* The evidence establishes that the thief escaped in an automobile operated by a confederate who had been waiting near by. It was a Hudson closed car, sedan type. As to its color there was some difference in description. It ranged all the way from olive green to blue with a greenish cast. A Hudson sedan in the custody of the police was shown to the jury. Its color is not easily named. It belongs to the impressionist school of painting. Some master painter evidently mixed a number of colors and succeeded in producing a result which may be variously described even in the absence of excitement. All witnesses, however, agree upon its registration. The car which figured in the robbery bore Massachusetts plates number 521,515.

The defendant Mielo admitted that he owned a Hudson sedan and that it carried a Massachusetts registration, number 521,515. The evidence is conclusive that it was Mielo's car which was used in the robbery.

*Second: Who was the driver of the car?* The State says it was Perriello; the accused denies the charge.

Ralph Di Luglio, a brother of the bank messenger, testified that about 8:40 of the morning in question he stopped to let a Hudson sedan, with a Massachusetts registration of over 500,000 which began and ended with a

5, pass him on Vinton street close to the scene of the robbery and that at that time Mielo was driving with Perriello beside him.

Vinton street runs into the southerly side of Atwells avenue at almost a right angle. The witness, who is in the insurance business, has his office in a store on the northerly side of Atwells avenue next adjoining the Dante State Bank on the east, and directly opposite Vinton street as it opens into Atwells avenue.

Di Luglio further said that about an hour later, as he was looking out of his store window up Vinton street, he saw the same car again come down Vinton street in the direction of Atwells avenue. This time the car turned into Gesler street, which runs parallel with and is a short block away from Atwells avenue.

Ralph Di Luglio positively identified both Perriello and Mielo.

Ernest Di Luglio, the bank messenger who was robbed, stated that as he chased the robber an automobile started from the curb on Vinton street, shot into Gesler street, was boarded by the thief from its right side a short distance from the corner of the two streets, and sped on in the direction of Ridge street.

According to John Savastano and Frank A. Corrente, a closed Hudson car, Massachusetts number 521,515, sped through Gesler street towards Ridge street, which is in the direction of Academy avenue, at about 9:45 on the morning of March 25. They noticed the car because it almost ran them down as they were crossing the street. These witnesses further testified that after the car had passed they saw a crowd near the corner of Vinton and Gesler streets, that they went to see what was the matter, and that they saw Ernest Di Luglio there in a semi-conscious or hysterical condition.

William E. McGann, now retired, but then Chief of Inspectors of the Providence Police Department, took personal charge of the investigation at the scene of the robbery. After gaining some fragmentary information at the Dante Bank, he started in search of a blue Hudson, sedan type, bearing Massachusetts registration number 521,515. Notice to apprehend the driver of a car bearing such a registration was also broadcasted. Close to eleven o'clock that same morning, as Chief McGann's car was going north along Academy avenue, the Chief's eye caught the last three numbers, 515, on the front registration plate of an automobile moving in the opposite direction. Immediately he attracted the attention of other officers in the car by shouting: "What's that? That's it." As the car passed him, he looked at the driver and saw Perriello at the wheel. He then turned his head and through the rear window of his automobile saw the full registration, Massachusetts 521,515, on the back of the car which had just passed him. Academy avenue at this point was torn up for repairs, so that the police car was unable to turn around but was forced to go through some side street in order to retract its course. By the time it reached Academy avenue again, the automobile in question had disappeared. Chief McGann's identification of Perriello was unequivocal and his testimony on this point impressively firm.

Inspector John R. O'Brien, who was sitting in the left rear seat of the police car and, therefore, nearest to the driver of an automobile going in the opposite direction, upon hearing Chief McGann exclaim, "What is this?" looked up, saw Perriello driving a closed car going in the opposite direction, turned around and saw the number 521,515 on the rear of the car that had just passed. He, also, unhesitatingly identified Perriello in the court-room.

The defendant Perriello was arrested by Officer Otis H. Nickerson, of the Boston police, shortly before 12 o'clock of the same day on the post road some seven miles from the center of Boston. He was then driving a sedan type Hudson car, Masachusetts registration 521,515, and coming from the direction of Providence. Perriello was taken to Station 17 where later in the day he was identified by Ernest Di Luglio, Chief McGann and Inspector O'Brien.

Perriello, in his defence, maintains that although he had been in Provi dence. he was neither at the scene of the offense nor on Academy avenue that morning. His claim is that he borrowed Mielo's car the night before for the purpose of a pleasure ride with one Frances Delaney; that at Miss Delaney's suggestion he drove to an inn somewhere in Providence; that they arived there about 11:45 P. M. and left around 2:15 A. M. of the morning of the 25th; that he drove back to the vicinity of the Biltmore Hotel, got into a dispute with Miss Delaney over something he could not remember on account of his somewhat intoxicated condition, left her alone at the corner of Fountain street around 2:45 that morning, checked his car in the Hip garage, and went in a cab to his aunt's house on Rugby street, where he remained for the rest of the night. He further testified that on the morning of the robbery he left the house around 8 o'clock, came down town in an electric car and drove his automobile out of the Hip garage about 8:30; that he was alone and immediately started for Boston; that in the vicinity of Wrentham one of his tires went flat, that he consumed about 1½ hours before he proceeded on his way, and that he was stopped by Officer Nickerson around 11:40 that morning.

His aunt, Rosina Perriello, told of the coming of Perriello to her house in the early hours of the morning, to his getting up at 7:30 and leaving her home shortly thereafter. Where he went, she could not say.

Francis Thomas, who took care of a lodging house in Boston, stated that a Frances Delaney roomed there, that he had seen Perriello in the doorway talking to her at night, but that he did not know whether or not she actually was there on March 24, 1929.

It is worthy of note that Frances Delaney did not appear as a witness. From the time that Perriello left her at Fountain street in the early hours of he morning of March 25 he never saw her again. Nor has he made any extensive search to ascertain her whereabouts. The extent of his efforts in locating Miss Delaney was to ask two of her chums, names not given, about her some two months after the robbery and nothing more.

The evidence of Ernest Di Luglio, Chief McGann and Inspector O'Brien is contradicted solely by the testimony of Perriello himself. The force of his evidence, however, is seriously impaired by contradictory statements made immediately after his arrest. To Chief McGann and Inspector Coffey he admits denying that he had been in Providence on the morning of the robbery. It was only when confronted by William J. Connors, a foreman at the Hip Garage who identified him, and when he was shown the record card with Connor's entry stating that car number 521,515 Massachusetts registration was taken out at 8:30 that morning, that Perriello admitted he had been in Providence at all. Furthermore, Chief McGann testified that Perriello told him that "he did not make the date," that he had driven alone to the vicinity of a lake, and that he had slept in his automobile that night. When asked by Officer Nickerson at the time of his arrest where he was com-

ing from, he answered that he had just gone out for a ride in the country.

The evidence can lead to but one conclusion and that is, that Perriello was in Providence in Mielo's car bearing Massachusetts registration 521,515, on the morning of March 25; that he was in the vicinity of Atwells avenue shortly before the robbery; that immediately after the robbery that particular car was boarded by the thief, sped on in the general direction of Academy avenue and that later that same car, with Perriello at the wheel, was on Academy avenue in this city.

*Third: Who was the thief and where was Mielo?*

Ralph DiLuglio states, as previously outlined, that Mielo was driving a Hudson car, sedan type, on Vinton street in the city of Providence at about 8:40 of the morning of the robbery, and that Perriello was with him.

Ernest Di Luglio, the messenger who was robbed, had an opportunity to see the thief's face, states that he did see it and affirms that it was the defendant Mielo.

Each of these witnesses by both conduct and words was positive in his identification. Furthermore, it is a positive fact that Mielo owned the Hudson car in the possession of the police, that it carried Massachusetts registration 521,515 and that it was in Providence that morning.

Mielo's defense was that at the time of the robbery he was in Boston. Briefly stated, his time is accounted for between preparations to move and a discussion of the position which posterity will accord Mussolino. In his testimony Mielo claimed that he put up his car around 6 p. m. on Sunday evening, March 24, and that he left instructions with the garage man to let Perriello have his car when he called. That evening he went to a the-

atre. The next morning, which was the day of the robbery, was his moving day. He claims that in the early part of the morning he was busy packing dishes; that he later went to find out if the gas and electricity had been connected in the new house; that he then returned to his home to see if the moving man had arrived, and that not finding him there he went out with his wife. They separated at the corner of Sudbury and Court streets. The wife went to visit her sick mother, while Mielo went to call on a friend, a Mr. De Martino, at 78 Prince street. He states that he reached this house about 9:30 that morning. From that time until 12 o'clock or thereabouts, Mielo was in talking with Mrs. De Martino and others who happened to be there or who called for one purpose or another. A great deal of time was consumed in an argument as to the greatness of Mussolino. This discussion was occasioned by an article which Mielo said he was reading in an Italian newspaper of that date at the De Martino home. The newspaper in question was not named. The defendant further said that he left his friend's house about 12 o'clock to return home and that he had reached Scollay Square when he was arrested.

Mrs. Mielo, wife of the defendant, Mrs. De Martino, Louis Ferraiolo, an insurance agent, Mrs. Di Giulio, a neighbor of De Martino who dropped in for a little morning gossip, and a Mr. Palmisano, gave testimony intended to support the defendant's claim.

An interesting bit of evidence was offered by Officer Charles A. Perelli, who patrols a beat close to but not including 78 Prince street. This officer said that on the morning in question he recalled trailing a suspicious person to the house on Prince street; that the man disappeared, and that while he was in the corridor or doorway of that house, he saw a short man who said

"Hello" to him and passed on. On direct examination he would not say that the man who spoke to him was Mielo. In cross-examination it appeared that one or two days later Mielo's wife met him on his beat, showed him a photograph of Mielo, called his attention to the incident, and suggested, either by question or affirmation, that Mielo had spoken to him that particular Monday morning. An entry in the officer's police book referring to this incident is interesting both as to its character and location in reference to other daily memoranda.

The evidence in behalf of the defendant Mielo must be weighed in the light of common sense and ordinary experience. There are certain phases of the testimony which fail to carry conviction. For instance, moving day in any home is one of confusion. The nerves are usually strained. A visit to friends or sick relatives is ordinarily postponed until a more propitious occasion. Much less is the householder disposed to enter into a long discussion as to the world appraisal of any living being. Mussolino may have redeemed Italy, but an argument over his accomplishments could hardly restore order in the Mielo home. The moving man was far more effective in accomplishing a transfer of abode. Yet Mielo, contrary to all reasonable expectations, forgets all about the mover who has failed to appear and spends considerable time discussing the hero of his native land. Again, the person who had been engaged to move his furniture was not presented as a witness and not even referred to by name. The Italian newspaper, which was said to have been the initial cause of the discussion, remains to this day among the list of the unknown.

Throughout Mielo's alibi there was an intangible yet sensed impression of craftsmanship. No reflection whatsoever is sought to be cast upon the attorneys who defended Mielo. Both are practitioners beyond reproach, who discharged their duties to the Court and to their client in a most able, courteous and honorable manner. Rather must we turn to the defendant's own witnesses for guidance in examining the credibility of the defense. The unusual situation created by the testimony of Officer Perelli is strongly indicative of the character of the defendant's claim.

A careful weighing of the testimony as it stands of record leads the Court to the same result which was reached by the jury. All things considered, the evidence establishes the fact that Mielo on the morning of March 25, 1929, was in Providence and not in Boston, and that he, Mielo, was the person who robbed Ernest Di Luglio.

The evidence supports a verdict of guilty as to each defendant.

Motion for new trial denied.

For State: Attorney General.

For defendant: Rosenfeld & Hagan.